RICHARD C. SCHMITZ AND CHRISTINE H. SCHMITZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schmitz v. Commissioner
Docket No. 20876-83.
United States Tax Court
T.C. Memo 1988-168; 1988 Tax Ct. Memo LEXIS 196; 55 T.C.M. (CCH) 658; T.C.M. (RIA) 88168; April 21, 1988. Paul M. Misch, for the petitioners. Matthew J. Fritz, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in petitioners' 1978 Federal income tax in the amount of $ 144,132 and an addition to tax for fraud under section 6653(b) [1] *198 in the amount of $ 72,066. The issues for decision are: (1) whether petitioners had unreported income in 1978 from the illegal sales of marijuana and cocaine as determined by respondent; and if so, (2) whether either or both petitioners are liable for an addition to tax for fraud; and (3) whether petitioner Christine M. Schmitz qualifies for relief from liability as an "innocent spouse" under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioner Richard C. Schmitz (hereinafter Mr. Schmitz) resided in Griffith, Indiana, and petitioner Christine H. Schmitz (hereinafter Mrs. Schmitz) resided in Creve Coeur, Illinois, at the time the petition in this case was filed. They were married in 1974 and filed a joint income tax return for 1978 (the year in issue). They were divorced in 1980. From the beginning of their marriage and throughout *199 the year in issue, petitioners resided in Peoria, Illinois, where Mr. Schmitz was employed as an engineer, and Mrs. Schmitz was sporadically employed as a salesperson and as a secretary. Petitioners' primary source of income, at least until 1977, was their wages, which ranged from a low of $ 8,368 in 1974 to a high of $ 23,109 in 1977. However, beginning in 1977, petitioners began supplementing their wage income through Mr. Schmitz's sale of marijuana and cocaine. [2]
Mr. Schmitz was a "wholesale" dealer; he purchased one or two bales of marijuana each week from a supplier to whom he was introduced by Mrs. Schmitz. He would then divide the bales (which approximate the size of a hay bale and weigh between 22 and 38 pounds) into packages of between one to ten pounds for sale to his customers. Mr. Schmitz used a different supplier to obtain his cocaine. The record discloses neither the level of Mr. Schmitz's cocaine sales nor the income derived therefrom. *200 Mr. Schmitz sold the drugs primarily from his home. Petitioners held frequent, almost daily, drug and beer parties in their home for customers, potential customers and friends. Although Mrs. Schmitz would greet the guests as they arrived and would serve them drinks, she was not directly involved in the sale of the drugs. During 1978, petitioners personally used, or gave away at their parties, between 20 to 30 marijuana cigarettes per day. Mr. Schmitz used cocaine several times a week; Mrs. Schmitz claims not to have used cocaine in 1978, but she admitted that she had used it previously. Mr Schmitz recorded his drug transactions in a diary notebook; it is unclear, however, whether he recorded only the sales of marijuana in the diary or his cocaine transactions as well. [3]
Mrs. Schmitz gave conflicting testimony. At one point she testified that she did not know that Mr. Schmitz was selling drugs, but she subsequently testified that she knew about her *201 husband's drug sales, but was simply unaware of the quantities of drugs that he sold. The proceeds of the drug sales were used to construct a three-bedroom house in which petitioners resided and to purchase a 1976 Lincoln Continental, a 1973 Cadillac El Dorado, and additional coins for Mr. Schmitz's existing coin collection. Mr. Schmitz collected coins because he believed that they were a good investment and would provide him with ready cash in case of his arrest. He purchased an Arabian horse as a birthday gift for his wife, but the horse was held only briefly due to Mrs. Schmitz's lack of interest in owning a horse. On January 7, 1979, the Illinois State police searched petitioners' house. During the search, the police confiscated Mr. Schmitz's drug records, scales, packets containing cocaine, packets containing a "green leafy substance," and a 45 caliber semiautomatic gun. [4] Both petitioners were present during the search. On February 8, 1979, Mr. Schmitz was charged with the *202 unlawful possession of cannabis. On February 15, 1979, he entered a plea of guilty to the charge, and was convicted. he subsequently was indicted and charged with the offense of unlawful delivery of cocaine. He entered a plea of guilty on August 7, 1980, and was convicted and sentenced to two years' probation. [5]
At the time of his arrest, Mr. Schmitz told the arresting officer that he generally was able to purchase marijuana at $ 270 to $ 300 per pound, and that he was able to charge his customers $ 370 to $ 400 per pound, although the prices often fluctuated. [6] At trial, Mr. Schmitz stated that on average he paid $ 350 per pound for the marijuana and generally sold it for $ 370 per pound. [7]
*203 The arresting officer, Sergeant Jerry Dean, who was familiar with marijuana prices in the Peoria area as a result of his work, testified that in 1978, dealers buying marijuana by the bale customarily would sell it with a markup of between 20 to 50 percent. Sergeant Dean further testified that sales of marijuana in one to five pound bags were generally at $ 400 to $ 450 per pound and sales of five pounds or more were between $ 370 to $ 375 per pound. Petitioners failed to include the income from Mr. Schmitz's drug sales in their 1978 joint tax return; they reported only $ 18,216 in wage income. Respondent determined that during 1978, Mr. Schmitz received income from the sale of drugs in the amount of $ 758,567, which was not reported on petitioners' tax return. This amount was determined from Mr. Schmitz's records by totalling the monthly sales figures set forth in the daily diary. Respondent then reduced the income from the sale of drugs by $ 508,240 (or 67 percent of sales) for cost of goods sold. Thus, respondent determined that the net amount of income received by petitioners from the sale of illegal drugs in 1978 was $ 250, 327. In addition, respondent determined that *204 peetitioners' failure to include the $ 250,327 income from drug sales was attributable to fraud. Petitioners admit that income from the sale of drugs is subject to Federal income tax. However, Mr. Schmitz contends that both Sergeant Dean and the District Attorney who were present at the time of his arrest told him that he would have immunity from reporting the income from his drug sales on his tax return. [8] Mrs. Schmitz contends that she is an "innocent spouse" within the purview of section 6013(e) and, as such, should be relieved from liability for both the deficiency and the addition to tax for fraud. Alternatively, petitioners contend that respondent overstated the amount of net income which they derived from the sale of drugs. [9]
OPINION
*205 The first issue to be resolved is the amount of income petitioners derived from the sale of illegal drugs in 1978. Petitioners bear the burden of proving that respondent's determination is in error. ; Rule 142(a). Petitioners do not dispute that Mr. Schmitz engaged in the sale of illegal drugs during 1978 from which petitioners derived income. Nor do the dispute that income from illegal drug sales generally is subject to the Federal income tax. Section 61(a); . Mr. Schmitz contends, however, that he was granted immunity from reporting such income on his Federal income tax return by Sergeant Dean and by the District Attorney. Sergeant Dean denies Mr. Schmitz's claim as to immunity. We believe Sergeant Dean. We do not believe that either a police officer or a District Attorney would purport to grant Mr. Schmitz immunity form paying taxes, a grant which neither the police officer nor the District Attorney has the power to give. Petitioners next contend that respondent's computation as to the amount of income derived from drug sales was overstated. Unlike many *206 cases involving income from illegal activities, respondent did not need to resort to indirect methods to compute petitioners' income from the drug sales. Mr. Schmitz kept daily records of his marijuana purchases and sales (and possibly his cocaine purchases and sales), including dates, amount of business transacted and monthly totals. Respondent worked directly from these records to determine the amount of drug sales. Because the records maintained by Mr. Schmitz were somewhat unclear, respondent's calculations may not be perfectly accurate. However, it is well settled that, in the absence of sufficient books and records, respondent may reconstruct a taxpayer's income by any method which is reasonable. Section 446; ; , affg. Memorandum Opinion of this Court; , affd. in an unpublished order . We find respondent's use of Mr. Schmitz's diary to be a reasonable method of reconstructing petitioners' 1978 income. In contending that respondent overstated *207 their income, petitioners disavow both the diary maintained by Mr. Schmitz and his prior statements to a police officer that the figures in his records represent his total business for each month. They contend that the diary was maintained to impress Mr. Schmitz's drug supplier and, therefore, the amounts contained therein include not only sales but purchases and returns as well. Petitioners' determination of income is based on the memory of Mr. Schmitz as to transactions which occurred over seven years earlier and results in an average profit of less than six percent on each pound of marijuana sold. We find the testimony of petitioners and their witnesses lacking in credibility. Mr. Schmitz's statement as to the level of profit derived from his drug sales is not believable; in our opinion, it is highly unlikely that one would be willing to take the risk inherent in selling illegal drugs for a five to six percent mark-up. On the other hand, we found the testimony of Sergeant Dean to be highly credible. He stated that dealers operating at the level of Mr. Schmitz in the Peoria area during 1978 realized a profit, on average, of between 20 and 50 percent. Respondent's determination *208 as to the amount of petitioners' unreported drug income, which was based on a 33 percent mark-up, is reasonable and is, therefore, sustained. Petitioners claim entitlement to a deduction for travel and gas expenses pursuant to section 162(a) [10] and a deduction for bad debts pursuant to section 166(a). [11] They presented no receipts, logs, or other evidence with respect to the claimed travel and gas expenditures, nor did they enlighten the Court as to how such expenses related to the drug sales. With respect to the claimed bad debt deductions, petitioners only proof was an entry in Mr. Schmitz's records and his testimony that such figure represented unpaid accounts receivable. As previously stated, we did not find the testimony of Mr. Schmitz credible. Thus, petitioners have not sustained their burden of proving entitlement to the claimed deductions. *209 Having sustained respondent's determination that petitioners are liable for tax on the unreported income, we now turn to the issue of whether the addition to tax for fraud pursuant to section 6653(b) [12] should be imposed. The burden of proving fraud by clear and convincing evidence is on respondent. Section 7454(a); ; Rule 142(b). This burden may be met by showing that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes, and that there is an underpayment of tax. ; , *210 cert. denied ; . However, respondent cannot satisfy his burden by relying solely on the failure of the taxpayers to discharge their burden of proving error in the determination of the deficiency. . It is unnecessary for respondent to prove the exact amount of income that was fraudulently unreported, because section 6653(b), as applicable to the year in issue, applies to the entire underpayment for that year if any portion of the underpayment for the year is attributable to fraud. [13]; . *211 The existence of fraud is a question of fact to be resolved upon a consideration of the entire record. , cert. denied , affg. ; ; , affd. without published opinion . Fraud will never be presumed. . Fraud may, however, be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. , affd. ; . The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; ; . The addition to tax for fraud must be proven with respect to each *212 spouse separately and cannot be imposed on both spouses simply by virtue of their having filed a joint return. Section 6653(b). Thus, we will examine the conduct of Mr. Schmitz and Mrs. Schmitz separately. We first address whether Mr. Schmitz understated petitioners' income with the requisite fraudulent intent, i.e., with the intent to conceal, mislead, or otherwise prevent the collection of taxes. It is clear that Mr. Schmitz knew that income derived from illegal drug sales is subject to tax. However, to support his failure to include such income on his return, he offered the explanation that he had been granted immunity from reporting the income. As previously stated, we find this assertion to be totally implausible. Second, the records maintained by Mr. Schmitz clearly were not prepared to facilitate the preparation of his Federal income tax returns, nor were they disclosed to the accountant who prepared petitioners' return. Based on Mr. Schmitz's entire course of conduct and the record in this case, we are convinced that his failure to include the income from drug sales on his 1978 Federal income tax return was due to his intent to conceal such income. We therefore *213 find him liable for the addition to tax pursuant to section 6653(b). We next address the issue of whether Mrs. Schmitz acted with fraudulent intent in understating petitioners' tax liability. It is clear that Mrs. Schmitz was aware that her husband's illegal drug sales gave rise to taxable income. It is also clear that she was aware that such income was not reported on petitioners' joint return, since the return reflected only wage income of $ 18,216. Mrs. Schmitz, however, took no action to disclose the income to the accountant who prepared petitioners' return. From our consideration of the entire record in this case, we conclude that Mrs. Schmitz shared in her husband's plan to prevent the collection of taxes on the income from the illegal drug sales. As such, we find her liable for the addition to tax pursuant to section 6653(b). The final issue for our consideration is whether Mrs. Schmitz qualifies for relief from liability for the deficiency in tax pursuant to section 6013(e). Spouses filing joint returns are jointly and severally liable for the tax due on their aggregate income. Section 6013(d)(3). However, if a taxpayer spouse satisfies the requirements of section *214 6013(e), the so-called "innocent spouse" provision, he or she is relieved of liability for specified deficiencies in tax in the return. Mrs. Schmitz bears the burden of proving that she is entitled to relief under section 6013(e). ;; Rule 142(a). One of the factors Mrs. Schmitz must prove to obtain relief from liability for the 1978 income tax deficiency is that, in signing the return, she did not know, and had no reason to know, that there was a substantial understatement of tax on the return (section 6013(e)(1)(C)). [14] The spouse claiming relief from liability for an omission of income must be unaware of the circumstances which gave rise to that omission and not merely to the tax consequences thereof. Purcell v. Commissioner, 86 T.c. 228, 238 (1986), affd. . Mrs. Schmitz's awareness of the circumstances which gave rise to the omission of income, i.e., her husband's drug sales, is fatal to her claim for relief; thus, we find she is not an innocent spouse pursuant to section 6013(e). *215 To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. A police officer testified at trial that a few years earlier, Mrs. Schmitz had been involved in drug dealings. Mrs. Schmitz claims she never sold drugs and that she tried to persuade her husband not to sell drugs. ↩
3. At one point in his testimony, Mr. Schmitz claimed that he did not keep records of his cocaine transactions, but he later testified that the transactions were reflected by "D.D.," the initials of his cocaine supplier. ↩
4. The police also confiscated $ 2,000 in cash which had been used in connection with a purchase of cocaine from Mr. Schmitz by his former brother-in-law, who was acting as a police informant. ↩
5. After his arrest, Mr. Schmitz became a police informant and was not prosecuted on felony drug charges. ↩
6. As part of their investigation of Mr. Schmitz, the police purchased one pound of marijuana from him for $ 400-$ 425. ↩
7. Petitioners called Mr. Schmitz's sister, current wife and a friend in an attempt to corroborate Mr. Schmitz's testimony. Mr. Schmitz's sister testified that in 1978 marijuana dealers in Peoria were able to purchase marijuana at $ 350 per pound. She also testified that Mr. Schmitz sold the marijuana for $ 370 to $ 375 per pound. Mr. Schmitz's current wife, who acknowledged having transported large quantities of marijuana across the country, testified that, in 1978, marijuana could be purchased at $ 340 to $ 370 per pound when purchased in quantities in excess of 20 pounds, and that one pound could be purchased for $ 350. Finally, a friend of Mr. Schmitz testified that Mr. Schmitz purchased marijuana at between $ 345 to $ 355 per pound and sold it for $ 365 to $ 370 per pound. ↩
8. Sergeant Dean denied that he made such a representation. ↩
9. Mr. Schmitz claims that he sold 1,982 pounds of marijuana and that his average profit from such sales was $ 20 per pound. Thus, he claims, his gross profit was $ 39,647, rather than $ 250,327 as respondent determined. He claims he incurred certain business expenses in connection with the drug sales and that his net profit from the sale of drugs was approximately $ 25,000. ↩
10. Section 162(a) provides, in pertinent part, as follows: (a) IN GENERAL. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩
11. Section 166(a) provides, in pertinent part, as follows: (a) GENERAL RULE. -- (1) WHOLLY WORTHLESS DEBTS. -- There shall be allowed as a deduction any debt which becomes worthless within the taxable year. ↩
12. For the year in issue, section 6653(b) provided, in pertinent part, as follows: (b) FRAUD. -- If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. ↩
13. Sec. 6653(b) has been amended, effective for returns due after December 31, 1986, by sec. 1503(a) of the Tax Reform Act of 1986 (the Act), Pub. L. 99-514, 100 Stat. 2742. The addition to tax for fraud, which was increased from 50 to 75 percent by the Act, is now applicable only to that portion of the underpayment that is attributable to fraud. However, after respondent proves the existence of fraud, the taxpayer must prove that portion of the underpayment which is not attributable to fraud. ↩
14. A substantial understatement is defined as "any understatement * * * which exceeds $ 500." Sec. 6013(e)(3). ↩